IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRIS GRINDLING, | ) | Civ. No. 06-00460 JMS-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART  DEFENDANT |
| DETECTIVE WENDELL LOO, | ) | LOO'S MOTION FOR SUMMARY |
| et al., | ) | JUDGMENT |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LOO'S MOTION FOR SUMMARY JUDGMENT

Pro se Plaintiff Chris Grindling alleges that Defendant Maui County Police Detective Wendell Loo ("Loo"), and unnamed others, arrested him without probable cause, and then illegally searched and seized items from his car, thus violating both the United States Constitution and state laws.

Before the court is Defendant Loo's Motion for Summary Judgment ("Motion"). Grindling did not file an Opposition to the Motion. The matter was heard on July 9, 2007. Despite attempts to contact Grindling by telephone, he did not appear at the hearing. For the following reasons, the court GRANTS IN PART and DENIES IN PART Defendant Loo's Motion for Summary Judgment.

# I. UNCONTROVERTED FACTS[1]

In late October 2004, the Goodyear Tires store in Kahului, Maui, was burglarized. Kihata Dec. ¶ 4. Many thousands of dollars worth of equipment, tools, and tires were stolen. *Id.* ¶ 5.

On November 4, 2004, Maui Police Officer Mary-Lee Sagawinit ("Sagawinit") was investigating a complaint of a naked man using the showers and harassing people at Hoaloha Park in Kahului, Maui. Sagawinit Dec. ¶ 4. Sagawinit was aware of the Goodyear Tires burglary, and knew that tires, mechanics equipment, tools, and toolboxes had been stolen. *Id.* ¶ 8. Sagawinit saw two men standing near a black pickup truck, and recognized one of the men as Grindling. Loo Dec. ¶ 6(b). Sagawinit noticed that in the truck's bed were several Goodyear tires, toolboxes, a gray "Action Packer," and a gray-colored tool container with the name "Kodani" written on it. Sagawinit also saw what she believed was a firearm in the cab of the truck. *Id.* ¶ 7.

---

[1] These facts are taken from Loo's Motion and its supporting exhibits and declarations. As noted, Grindling has not filed an Opposition to the Motion. Moreover, Grindling's Complaint is unsigned, is not sworn under penalty of perjury, and cannot be considered a verified complaint sufficient to serve as an opposing affidavit under Rule 56 of the Federal Rules of Civil Procedure. A court ruling on summary judgment should not consider the "mere allegation and speculation" of the parties. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). When the nonmoving party is proceeding pro se, the court has a duty to consider the nonmovant's contentions set forth in motions and pleadings only if they are signed under penalty of perjury. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). Consequently, the court does not consider the facts and contentions contained in Grindling's unverified Complaint.

Maui Patrol Officer Samuel Gasmen ("Gasmen") was also investigating the report of the naked man at Hoaloha Park. Loo Dec. ¶ 7(a). He too noticed the two men standing near the black pickup truck, and recognized one of them as Grindling and the other as Thomas Edwards, Jr. ("Edwards"). *Id.* ¶ 7(b, c, g). Gasmen states that Edwards, who was standing next to the open driver's door, was the operator of the truck. *Id.* ¶ 7(g). Gasmen also noticed the tires and tools in the bed of the pickup truck and what appeared to be a firearm in the cab of the truck. *Id.* ¶ 7 (d & f). Gasmen and Sagawinit conferred with each other regarding the Goodyear Tires robbery and their suspicions regarding the items in the bed of the truck.

At some point during these events, Sagawinit contacted Loo about the pickup truck and its contents, and her belief that the items in the truck matched the items stolen from Goodyear Tires. Loo Dec. ¶¶ 4-5; Loo Aff. ¶ 6(i) . Loo also spoke with Gasmen. Loo Aff. ¶ 7. Loo conducted a criminal history check of Grindling and Edwards, and discovered that Grindling had a felony conviction for Terroristic Threatening in the First Degree. *Id.* ¶ 8. The exact timing of these events, and Loo's contacts with Gasmen and Sagawinit, are not evident in the record.

When Sagawinit approached the men, Grindling attempted to drive away in another vehicle. *Id.* ¶ 6(c). Sagawanit states that "based on the information that I had received and observed, Chris Grindling and Thomas Edwards were placed under arrest for Burglary in the Second Degree."[2] Sagawanit Dec. ¶ 9. Sagawinit states that, "[a]fter being informed of his arrest," Grindling began yelling, "I want to confess, I'm going to waive all my rights, I want the real criminals arrested, me and 'T' are just the delivery boys, you gotta . . . ." *Id.* ¶ 11. Although Sagawinit told Grindling not to make any statements until he was given his Miranda warnings, he continued yelling "you guys gotta arrest them, this stuff was only in the truck for less than one hour, you guys must have been watching us, who called us in, what's the p.c.[3] for this arrest. You guys know who called, those guys helped us pack the truck, they're the real criminals. I want to confess everything." *Id.* ¶ 12.

Grindling and Edwards were taken to the Wailuku jail. The black pickup truck containing the tires and toolboxes was also taken to the Wailuku

---

[2] Due to the passive language Sagawinit and Loo use in their declarations, it is impossible to determine the extent of Loo's involvement in Grindling's arrest. It is unclear who actually arrested Grindling, or if the arrest was at Loo's direction. Nor does Grindling's Complaint provide this information, and neither Sagawinit nor Gasmen are named as defendants.

[3] It appears that Grindling was immediately questioning the probable cause for the arrest as he also uses this acronym, "p.c.," to represent probable cause, in his Complaint.

police station to secure it until a search warrant could be obtained. *Id.* ¶ 10; Ex. 1, Search Warrant. Grindling's automobile was left at Hoaloha Park.

The next day, November 5, 2007, Loo executed an affidavit for a search warrant to search the black pickup truck. Ex. A, Loo Aff. The affidavit notes that the pickup truck was registered to Charlotte U. Vasquez, not to Thomas. *Id.* The Circuit Court of the Second Circuit, State of Hawaii ("circuit court"), issued a search warrant for the truck that same day. *Id.* Nov. 5, 2004 Search Warrant.

Loo states that Edwards told him that the tires on Grindling's automobile, which was still at Hoaloha Park, were stolen from Goodyear Tires. Loo Dec. ¶ 7. Loo does not recount when Edwards told him this. Loo went to Hoaloha park, checked the tires on Grindling's automobile, and confirmed that they matched the description of tires stolen from Goodyear Tires. *Id.* ¶ 8. Again, Loo does not detail exactly when this happened. Loo impounded Grindling's vehicle, contacted the Goodyear Tires assistant manager, and determined that the serial numbers on Grindling's vehicle's tires matched the serial numbers of the tires stolen from Goodyear Tires. *Id.* ¶ 9. The tires from Grindling's automobile and numerous items from the pickup which were stolen from Goodyear Tires were

returned to Goodyear Tires.  *Id.* ¶¶ 9-11.  It is unclear from the record if the items were removed pursuant to a search warrant.

On July 21, 2005, Grindling filed his Complaint in the circuit court. Defendants removed the Complaint to federal court on August 25, 2006.  *See* Doc. No. 1.  The Complaint alleges that Grindling was arrested without probable cause and held for two days.  Comp. ¶¶ 13-15.  Grindling states that when he was released and returned to Hoaloha Park to retrieve his car, it was gone.  *Id.* ¶ 16. Grindling discovered it had been impounded, and three weeks later received a letter asking him to retrieve it.  When he did so, he found the tires and rims were missing, and he also alleges that the battery, stereo, and a plasma television were gone.[4]  *Id.* ¶ 19.

The Complaint names Detective Loo in his individual capacity only. Although approximately two years have passed since the Complaint was filed in state court, no other Defendants have been named or served.  Moreover, although Grindling fails to name the County of Maui ("County") in the caption of his Complaint, and names it only in passing in the body of the Complaint, the County has never been served.

---

[4]  The court provides these details solely to describe Grindling's allegations as set forth in his Complaint.  As noted, Grindling fails to support these statements by competent evidence of any kind.

6

Grindling alleges federal claims arising under 42 U.S.C. § 1983,  as well as state law claims.  Although not explicit in the Complaint, the court construes Grindling's constitutional challenges as alleging a warrantless arrest without probable cause and unlawful search and seizure under the Fourth Amendment, and a due process violation under the Fifth and Fourteenth Amendments.  Comp. ¶¶ 22-23, Count Two.  Grindling's state law claims allege negligent deprivation of his personal property, and intentional and negligent infliction of emotional distress.  *Id.* ¶ 21, Count One; ¶¶ 43-46, Count Three; and ¶¶ 47-50, Count Four.  Grindling seeks compensatory and punitive damages.

## II.  <u>LEGAL STANDARD</u>

Summary judgment shall be granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted against a party that fails

to demonstrate facts to establish what will be an essential element at trial.  *See id.* at 323.

A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party must identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing Celotex Corp.*, 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  *Porter*, 419 F.3d at 891 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003);

8

*Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

## III.  DISCUSSION

Loo argues that Grindling's arrest, and the search and seizure of both the pickup truck and Grindling's car, comported with the Fourth Amendment's requirements.  He further argues that Grindling fails to state a claim under the Due Process Clause for the deprivation of his property, and claims that, even if he did dispose of Grindling's property, this would constitute negligence at most.  He also asserts that he is entitled to qualified immunity.

### A.      Section 1983 and Qualified Immunity

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Ninth Circuit employs a three-part test in determining whether police officers are entitled to the protection of the qualified immunity doctrine. *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006).[5]  The

---

[5] Other Ninth Circuit cases have applied a two-part test, conflating the second and third prongs of the test.  *See, e.g., Preschooler II  v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175 (9th Cir. 2007); *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004).  Whether applying a two or

(continued...)

9

court must first answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer[s'] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the answer is no, qualified immunity applies to the conduct.  If the answer is yes, the court proceeds to the second level of analysis.

The second prong of the qualified immunity analysis determines whether the right allegedly violated was "clearly established" at the time the officer acted.  *Id.* at 201-02.  This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* at 201.  A claim of a constitutional violation in a generalized sense is insufficient; instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier,* 533

---

[5](...continued)
three-part test, the court considers the same factors.

U.S. at 202.  If the answer to this question is no, qualified immunity applies to the conduct.  If the answer is yes, the court turns to the third and final prong.

The final question the court must ask is "whether the officer[s] could have believed, 'reasonably but mistakenly . . . that [their] conduct did not violate a clearly established constitutional right.'"  *Skoog*, 469 F.3d at 1229 (*quoting Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)).  Thus, the doctrine of qualified immunity "allows ample room for reasonable error on the part of the official.  It encompasses both mistakes of fact and mistakes of law." *Rudebusch v. Hughes*, 313 F.3d 506, 514 (9th Cir. 2002) (citations, brackets, and internal quotation signals omitted).  However, "qualified immunity will not protect the plainly incompetent or those who knowingly violate the law." *Preschooler II  v. Clark County Sch. Bd. of Trs.,* 479 F.3d 1175, 1180 (9th Cir. 2007); *see also Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (noting that police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

## B.    Grindling's Arrest and the Seizure of His Automobile

Freedom from arrest without probable clause is a clearly-established constitutional right. *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) ("That a police officer may arrest a suspect only if he has probable cause to

believe a crime has been committed is a bedrock Fourth Amendment precept.");

*see also Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002).  Probable cause exists

if, "under the totality of circumstances known to the arresting officers, a prudent

person would have concluded that there was a fair probability that [the defendant]

had committed a crime."  *Beier*, 354 F.3d at 1065 (*quoting Grant v. City of Long

Beach,* 315 F.3d 1081, 1085 (9th Cir. 2002)); *see also Franklin*, 312 F.3d at 438

("Probable cause exists when police have knowledge *at the moment of arrest* of

facts and circumstances based on reasonably trustworthy information that would

warrant a belief by a reasonably prudent person that the person arrested has

committed a criminal offense.") (emphasis added); *Beck v. State of Ohio*, 379 U.S.

89, 91 (1964). The question is "whether the [officers] acted reasonably under

settled law in the circumstances."  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

Under the collective knowledge doctrine, what one officer knows is

imputed to other officers' knowledge.[6]  *United States v. Ramirez,* 473 F.3d 1026,

1032-37 (9th Cir. 2007); *United States v. Pinion*, 800 F.2d 976, 979 n.1 (holding

that the collective knowledge of all officers involved in a coordinated

---

[6]  While it is unclear who actually arrested Grindling, all three officers were involved in
the arrest and their collective knowledge is considered in making the probable cause
determination.

investigation must be attributed to the arresting officers) (9th Cir. 1986); *United States v. Bernard*, 607 F.2d 1257, 1267 (9th Cir. 1979).

Taking the facts in the light most favorable to Grindling, as well as resolving all inferences in his favor, this court is unable to determine, with the record now before it, who is responsible for Grindling's arrest, and whether that arrest was made upon probable cause. Neither Grindling's Complaint nor Defendant's exhibits disclose this information to any degree of certainty.

What is clear from the record is that the officers possessed the following pertinent information: (1) the Goodyear Tires store had been recently burglarized; (2) tires, automotive tools, and other mechanics' equipment and toolboxes were stolen; (3) two men were seen at Hoaloha park, standing near a black pickup truck; (4) in the bed of that truck were tires, tools, toolboxes, and equipment matching the description of items stolen from Goodyear Tires; (5) a suspected firearm was seen in the cab of the truck; (6) Edwards, not Grindling, was standing at the open driver's side door and was the operator of the truck; (7) Edwards and Grindling were both known to the officers; and (8) Grindling got in his car and attempted to leave when the officers approached.

This information may have been sufficient to give the officers the reasonable suspicion necessary to conduct an investigatory stop of the two men

pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).  The record shows, however, that

Grindling and Edwards were not stopped for investigation, but were immediately

arrested.  While this information was likely sufficient for them to conclude that

*Edwards* had committed a criminal offense -- the burglary of the Goodyear Tires

store -- and thus, gave them the probable cause to arrest Edwards, without more,

the same cannot be determined as to Grindling.  *See United States v. Buckner*, 179

F.3d 834, 838 (9th Cir. 1999) ("[A] person's mere presence or 'mere propinquity'

to criminal activity alone does not support probable cause to search or arrest that

person.") (citation omitted).

It is uncertain what Grindling was doing that caused the officers to

arrest him.  While the record shows that Grindling had a felony conviction for

Terroristic Threatening in the First Degree, it is not clear when this information

became known to the officers.[7]  The simple fact that Grindling was standing next

to a truck containing suspected stolen goods, speaking to the driver of that truck,

while in a public park that is not described as being particularly known for this

---

[7]  Moreover, Grindling's conviction of Terroristic Threatening in the First Degree is a substantially different type of criminal activity than burglary and does not necessarily give rise to an inference that Grindling had committed a burglary.  *See Greenstreet v. County of San Bernardino,* 41 F.3d 1306, 1309 (9th Cir. 1994) (holding that prior arrests and convictions can help establish probable cause, particularly "where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover."); *United States v. $22,474.00 in United States Currency*, 246 F.3d 1212, 1217 (9th Cir. 2001) (same).

type of criminal activity, is insufficient to alert a reasonably prudent police officer to conclude that Grindling had committed a criminal offense, without more information as to Grindling's behavior.  Grindling's presence at the park is easily justified as innocent --  two acquaintances meeting by chance at a park.  *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (holding that officers did not have reasonable suspicion for an investigatory stop when they detained two men who were walking away from each other in an alley in an area known for drug trafficking because "the . . . activity was no different from the activity of other pedestrians in that neighborhood"); *see also United States v. Montero-Camargo*, 208 F.3d 1122, 1139 (9th Cir. 2000) (noting that the district court must be "particularly careful . . . that a 'high crime' area factor is not used with respect to entire neighborhoods" or areas, but should be reserved for "specific, circumscribed locations where particular crimes occur with unusual regularity.").

Nor does the fact that Grindling allegedly attempted to leave the park when he saw the officers approaching necessarily elevate these facts to the level of probable cause.  If, as the record shows, Grindling attempted to leave the scene as the officers *approached* the truck, this suggests that the officers could not yet have had a clear view into either the bed or the cab of the truck before they stopped

Grindling.  If that is true, they could not have seen the suspected firearm in the cab or the suspected stolen goods in the bed.

It is uncertain when Grindling attempted to leave, what information the police had concerning him prior to the arrest, what his behavior was, where he stood in relation to the truck, and when Sagawinit and Gasmen first noticed the stolen goods and suspected firearm in the truck.  *See Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1996) ("Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.") (internal quotation marks and citation omitted).

Loo argues that "Plaintiff was arrested because he was in possession of property that was clearly stolen."  Mot. 4.  The record shows, however, that it was only *after* the men were arrested and transported to the Wailuku jail, that Edwards told Loo that the tires on Grindling's car were stolen from Goodyear Tires.  Loo then returned to the park, verified the serial numbers on Grindling's tires, called Goodyear Tires and compared those numbers with the stolen tires, and only then determined that the tires were stolen.  At the time of the arrest, there is nothing in the record suggesting that anyone knew or suspected that the tires on Grindling's car were stolen.  Further, Grindling's inculpatory statements

16

concerning the items in the truck also came *after* Sagawinit informed Grindling that he was under arrest.  *See* Sagawinit Dec. ¶ 11.  It is well-settled that "'[f]acts uncovered after the arrest are irrelevant' to determining whether there was probable cause to arrest in the first place." *Hart v. Parks*, 450 F.3d 1059, 1064 n.3 (9th Cir. 2006) (*quoting United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005) (*citing Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1996)).

  The facts are similarly uncertain as to what Loo knew when he seized Grindling's car and tires.  Loo argues that the tires on Grindling's car were in plain view, their serial numbers matched the numbers of the tires stolen from Goodyear Tires, and therefore, the car and tires were legally searched and seized.  *See Cardwell v. Lewis*, 417 U.S. 583, 591-92 (1974).  Unfortunately, he has put the cart before the horse.

  "[A]n essential predicate to any valid warrantless seizure of incriminating evidence [is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136 (1990); *United States v. Bulacan,* 156 F.3d 963, 968 (9th Cir. 1998), *as amended*, (Nov. 16, 1998).  For the "plain view" exception to apply, the initial intrusion must be lawful, and "the incriminatory nature of the evidence must be immediately apparent to the officer." *United States v. Garcia,*

205 F.3d 1182, 1187 (9th Cir. 2000) (*citing United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996)).  The only reason that Grindling's car was in plain view at the park when Loo returned to check the serial numbers is because Grindling had been arrested.  Absent his arrest, Grindling certainly would have driven away from the park.  Moreover, the incriminatory nature of the tires did not become evident until after the arrest, when Edwards told Loo that the tires were stolen and that Grindling had attempted to burn the serial numbers off of them.

Defendant's evidence is insufficient for this court to determine whether there was probable cause to arrest Grindling or whether Loo illegally searched and seized Grindling's automobile.  The question of whether Loo is entitled to qualified immunity with respect to these claims simply cannot be determined on these facts.  In light of the totality of the circumstances, as set forth in Sagawinit and Loo's declarations, and Loo's affidavit, this court finds that genuine issues of material fact exist as to whether the police had probable cause to arrest Grindling and whether the search and seizure of Grindling's automobile and tires violated Grindling's constitutional rights.  As such, the court cannot make a determination regarding Loo's entitlement to qualified immunity on these issues at

this time.  The Motion is DENIED without prejudice to Defendant making another motion supplementing the facts with a more substantial record.[8]

## C.    The Search of the Truck

Grindling also challenges the search and seizure of the pickup truck. Although Grindling is not seeking to suppress the evidence obtained during the search of the truck, a similar analysis informs this discussion.  "[A] person seeking to exclude evidence allegedly obtained in violation of the fourth amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence."  *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005).  The record is clear that Edwards, not Grindling, was the operator of the truck, and that Charlotte Vasquez was the owner of the truck.  Grindling had no possessory interest in the pickup truck, and thus, "'has no reasonable expectation of privacy in [it] that would permit [his] Fourth Amendment challenge to a search of [it].'" *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (*quoting United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995).

Moreover, the search and seizure of the truck followed Edwards's lawful arrest, and was done pursuant to a lawfully executed search warrant.  As

---

[8]  If Defendant decides to do so, the court will entertain a motion to extend the time for filing dispositive motions.

such, the search and seizure was not the product of Grindling's illegal detention, and because Grindling has no standing to otherwise challenge the search, he cannot challenge any evidence recovered from the search.  *See Pulliam*, 405 F.3d at 790.  Insofar as Grindling challenges the search of the pickup truck as a constitutional violation of *his* rights, or challenges the evidence seized during that search, summary judgment is GRANTED.

## D.    Due Process Claims

Loo argues that, because there are adequate state law remedies available to correct the alleged deprivation of Grindling's property, he cannot maintain a due process claim for the alleged loss of his property.  The court agrees in part.

A civil rights complaint cannot be brought to vindicate a plaintiff's right to property when the deprivation occurs as a result of a tortious and unauthorized act of a state employee, whether that act is negligent or intentional, and where an adequate state remedy exists to compensate those who have suffered the tortious loss of property at the hands of the state.[9]  *Hudson v. Palmer*, 468 U.S.

---

[9]  Hawaii law provides that public employees are liable for torts in the same manner and to the same extent as a private individual under like circumstances.  Haw. Rev. Stat. ("H.R.S.") § 662-2.  Because the state expressly waives its immunity for its employees' torts, § 662-2 provides an adequate post-deprivation remedy for Grindling's alleged loss of property.

517, 532-33 (1984) (finding no claim for intentional destruction of inmate's property); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).

Grindling alleges that Loo is responsible for the loss of his property, including the automobile's tires and rims, a battery, stereo, and a plasma television.  The alleged deprivation of the battery, stereo, and plasma television, which Loo claims may have been stolen while the automobile was unattended in the park while Grindling was in jail, is obviously a random and unauthorized loss and was clearly not taken by the police in accordance with any established state procedure or official policy.  Thus, Grindling's allegations concerning these items do not state a due process claim under section 1983.  *Parratt*, 451 U.S. at 535-44.

The result is not so clear as to the missing tires.  Again, the facts here are insufficient for the court to determine what actually happened to the tires.  If the tires were returned to Goodyear Tires pursuant to a judicial determination that they were stolen, then due process has been satisfied.  If however, there was no such determination, and they were returned to Goodyear pursuant to an official police policy, this would constitute the intentional and *authorized* deprivation of property and these allegations may state a claim despite the availability of an adequate remedy under H.R.S. § 662-2.  *See, e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (discussing intentional or deliberate conduct

authorized by established state procedure); *Piatt v. MacDougall,* 773 F.2d 1032, 1036 (9th Cir. 1985) (en banc) ("deliberate, considered, planned, or prescribed conduct"); *Quick v. Jones*, 754 F.2d 1521, 1523-24 (9th Cir. 1985).   If Grindling was never given notice or an opportunity to be heard regarding the tires, there may have been a violation of due process.  Of course, the evidence before this court establishes that the serial numbers on the tires matched the stolen tires' serial numbers, substantially undercutting any claim Grindling has to them.

Summary judgment is GRANTED with respect to Grindling's due process claims regarding the loss of the plasma television, stereo, and the battery. Summary judgment is DENIED with respect to Grindling's due process claims regarding the loss of the tires and rims.

## E.    County of Maui

Although Grindling named the County in the body of his Complaint, he has never caused the Complaint to be served on the County, nor does he allege any facts showing that the County is responsible for his claims.  Grindling also fails to describe the nature of the County's responsibility for his alleged injuries. Liability may be imposed on an individual defendant under § 1983 only if the plaintiff can show that the defendant caused the injuries of which he complains.

*Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg,* 664 F.2d 1121, 1125 (9th Cir. 1981).

Grindling vaguely alleges, at the end of his Complaint, with no further supporting facts or comment: "Respondeat Superior: Governmental Defendants." While § 1983 applies to municipalities and local governmental units, respondeat superior is not a sufficient basis for imposing liability under § 1983. *Monell v. Dep't of Social Servs. of New York City,* 436 U.S. 658, 663-64 n.7, 690, 694 (1978); *Ybarra v. Reno Thunderbird Mobile Home Vill.,* 723 F.2d 675, 680 (9th Cir. 1984). State officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation. *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).

In order to establish a jurisdictional basis for imposing liability against the County, Grindling must allege facts showing (1) that the County proximately caused the deprivation of rights of which he complains; or (2) that the County, in a supervisory capacity, failed to properly train or supervise personnel resulting in the alleged deprivation; (3) that the alleged deprivation resulted from official policy or custom for which the County was responsible; or (4) that the County knew of the alleged misconduct and failed to act to prevent future misconduct. *Ybarra*, 723 F.2d at 680-81; *Taylor v. List*, 880 F.2d 1040, 1045 (9th

Cir. 1989) (liability may be imposed on a supervisor if he participated in or directed the violations of his subordinates, or knew of the violations and failed to act to prevent them).

The Complaint is defective in that Grindling has failed to describe the nature of the County's responsibility for the incident giving rise to his claims. Grindling fails to allege any actions or omissions on the part of the County which link the County to his injury. Claims against the County are DISMISSED both for Grindling's failure to timely serve the County, and to allege sufficient facts against it.

**F.      Intentional and Negligent Infliction of Emotional Distress Claims**

Grindling also raises state law claims of negligent deprivation, or conversion, of property, and negligent and intentional infliction of emotional distress.[10]

**1.      *Intentional Infliction of Emotional Distress***

Under Hawaii law, a plaintiff must prove the following elements to form an intentional infliction of emotional distress claim: (1) the conduct causing the harm was intentional or reckless, (2) it was outrageous, and it (3) caused, (4)

_____

[10] As Loo makes no argument in support of summary judgment with respect to Grindling's negligent deprivation of property claim, the court does not address it here.

24

extreme emotional distress.  *See Brooks v. Dana Nance & Co.*, 113 Haw. 406, 416, 153 P.3d 1091, 1101 (2007).  An act is outrageous if it is "without just cause or excuse and beyond all bounds of decency."  *Shoppe v. Gucci America, Inc.*, 94 Haw. 360, 387, 14 P.3d 1049, 1068 (2000).

Extreme or severe "emotional distress is defined as 'mental suffering, mental anguish, mental or nervous shock [and] . . . includ[ing] horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea."  *Hac v. Univ. of Hawaii*, 102 Haw. 92, 106, 73 P.3d 46, 60 (2003).  Serious emotional distress is found where a normally constituted reasonable person would be unable to cope with the mental stress engendered by the circumstances of the case.  *Rodrigues v. State of Hawaii*, 52 Haw. 156, 173, 472 P.2d 509, 520 (1970); *Marquardt v. United Airlines, Inc.,* 781 F. Supp 1487, 1491 (D. Haw. 1992).

Grindling has failed to allege any facts that would establish his claim of intentional infliction of extreme emotional distress.  First, none of the acts alleged against Loo can be seen as "outrageous" or beyond the bounds of decency.  Grindling, a convicted felon, was arrested with another man who had stolen items in his truck.  Grindling's tires, which were later shown to be stolen, were seized and not returned to him.  While it hasn't been determined whether Grindling's

arrest and the seizure of his car violated the Fourth Amendment, the facts do not

establish that any of the police officers' conduct was outrageous or beyond the

bounds of decency, or shock the conscience.

Second, Grindling fails to allege any facts establishing his severe and

extreme mental distress.  He simply makes blanket allegations that Defendant's

actions resulted in emotional distress, mental anguish, humiliation, and

embarrassment, without providing any competent evidence to support those

allegations.  Grindling has failed to carry his burden of going beyond the

pleadings and establishing the facts underlying these claims.  Summary Judgment

is GRANTED in Loo's favor with respect to Grindling's claim of intentional

infliction of emotional distress.

### 2.     *Negligent Infliction of Emotional Distress*

To prove negligent infliction of emotional distress, a plaintiff must

prove: (1) the defendant engaged in negligent conduct; (2) that resulted in serious

emotional distress; (3) that the conduct was the cause of the distress; and (4)

resulted in some underlying physical injury to the plaintiff or his or her property.

*See Calleon v. Miyagi*, 76 Haw. 310, 320, 876 P.2d 1278, 1288-89 (1984).

Moreover, in Hawaii there is no liability for negligent infliction of emotional

distress "if the distress arises solely out of damage to property or material

objects[,]" without an allegation of physical injury or mental illness.  *See* H.R.S. §

663-8.9.  To prove negligence, the plaintiff must establish: (1) a duty to conform

to a certain standard of conduct; (2) a breach of that duty; (3) a reasonably close

causal connection between the conduct and the resulting injury; and (4) actual loss

or damage.  *See Bhakta v. County of Maui*, 109 Haw. 198, 211, 124 P.3d 943, 956

(2005).

  Again, other than his vague allegations of negligence, and his

resulting emotional distress and embarrassment, Grindling fails to otherwise

support this claim.  Grindling does not provide proof that any of his property was

actually lost or damaged.  The evidence before the court shows that the tires on

Grindling's car were taken by the police because they were stolen from Goodyear

Tires.  There is nothing else before the court, other than Grindling's unsupported

unverified claims, that the other property either exists or was even in the car when

Grindling was arrested, and missing when he retrieved the car.  Grindling also

fails to allege facts establishing a breach of a duty of care or establishing that any

negligent act resulted in his physical injury or mental illness.  Summary Judgment

is GRANTED with respect to Grindling's negligent infliction of emotional distress

claim.

# IV.  CONCLUSION

1.  Loo's Motion for Summary Judgment is DENIED IN PART
and GRANTED IN PART.  Specifically, Loo's Motion is DENIED with respect to
Grindling's claims asserting: (a) arrest without probable cause; (b) illegal search
and seizure of his automobile; and (c) denial of due process for the seizure of his
tires.  This denial is without prejudice to Defendant bringing another motion that
is adequately supported.

Loo's Motion for Summary Judgment is GRANTED with respect to
Grindling's: (a) search and seizure claims relating to the black pickup truck; (b)
due process claims relating to the alleged loss of his battery, stereo, and plasma
television; and (c) claims alleging intentional and negligent infliction of emotional
distress.

2.  The County of Maui and all § 1983 claims against it are DISMISSED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 12, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Grindling v. Loo, et al.*; Civ.No. 06-00460 JMS-KSC; Order Granting in Part and Denying in Part Defendant Loo's
Motion for Summary Judgment; dmp\ Orders 07\ Grindling 06-460 (#1 partial grt MSJ)